RAYMOND S. BERRY [0311]
ROBERT B. DENTON [0872]
Attorneys for Disability Law Center, Plaintiff
205 North 400 West, 1st Floor
Salt Lake City, UT 84103
Telephone (801)363-1347
E-mail Address, sberry@disabilitylawcenter.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER<br><br>    Plaintiff, | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH RULE 34 REQUEST FOR INSPECTION OF FACILITY AND OPERATIONS** |
| v.<br><br>DISCOVERY ACADEMY, BRENT HALL, Executive Director of Discovery Academy, BRENT HALL, dba Discovery Academy, and IVY ACADEMY, INC., dba Discovery Academy.<br><br>    Defendants. | Case No. 2:07-cv-511<br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul Warner |

Plaintiff Disability Law Center ( hereafter "DLC") respectfully files and serves the following memorandum of points and authorities in support of its Motion to Compel Compliance with its Rule 34 Request for Inspection of Facility and Operations. The purpose of the requested inspection is to allow the DLC's chosen expert, Dr. Matthew Davies, to collect evidence relevant to determining whether the Discovery Academy ( hereafter "DA") serves students with "significant mental illness or emotional impairment." 42 U.S.C.A. 10802(4).

## STATEMENT OF FACTS

1. In this action the DLC seeks declaratory and injunctive relief directing that the defendants allow the DLC to interview students and staff of the Discovery Academy,

inspect physical structures, and review selected school records, in order to investigate complaints of improper restraint and seclusion methods employed by the school.

2.  In early June, 2005 the intake office at the DLC received a phone call from an individual who reported the possible abuse of a student at the Discovery Academy. Specifically, the caller reported that a student was being held in seclusion for periods of time much longer than permitted under the relevant Utah administrative rules. The caller requested that his identity not be disclosed.

3.  On June 17, 2005 DLC staff members met with the student. The student reported that he/she had been restrained multiple times during a four hour period, and that he had been isolated in a room called the Intensive Supervision Unit (ISU) for long periods of time. The student also described the physical condition of the ISU, and ways in which isolation in the ISU was used by DA Staff with other students. On June 21, 2007 DLC staff was allowed to examine the ISU room, observing that it was very dirty and very small, barely big enough to hold a twin mattress.

4.  Based on the report received from the student, the original complainant/caller, and observations of the ICU, the DLC initiated an investigation of Discovery Academy systemic practices and procedures with respect restraint and the ISU, to determine if those practices constituted abuse and/or neglect of students with significant emotional impairments. The student who was the alleged victim of the inappropriate restraint and seclusion left DA in the fall of 2005.

5.  Discovery Academy responded the DLC's decision to investigate restraint procedures by denying the DLC permission to interview other students and staff on the subjects of use of restraint and the ISU. In the view of DA administrators, because the school did not serve any student with significant mental illness or emotional impairment, the

DLC was not authorized by federal statutes to conduct any investigation of the facility.

6. As Utah's designated representative to the federal protection and advocacy system the DLC is charged with investigating complaints of abuse or neglect at facilities that house individuals with significant mental illness, as that term is defined by federal statute. 42 U.S.C.A §10801(b)(1). An individual with mental illness means, an "individual who has significant mental illness or emotional impairment." 42 U.S.C.A §10802(4)(A).

7. Despite the good faith efforts of both parties to resolve the dispute, the impasse over the extent of the DLC's authority to investigate complaints of actions occurring at Discovery Academy has not been resolved. Presumably, the Discovery Academy believes that allowing the DLC to investigate complaints will interfere with its program. The DLC believes that the federal statutes under which it operates mandate the prompt investigation of complaints of abuse and/or neglect, and that it cannot reasonably satisfy that obligation if a as a pre-condition to access it must first judicially establish that a given facility serves emotionally impaired minors. The DLC must have the ability to make an initial investigation to determine whether a given facility serves minors eligible for DLC services.

8. Although three years have passed since the events that gave rise to this action occurred, the DLC has not been allowed to complete its investigation by interviewing a handful of students and staff in a private setting that protects those students from retaliation about methods of restraint used by the Discovery Academy, or about the use of the ISU or other unnecessarily intrusive behavioral interventions.

3

9. On August 1, 2008 the DLC served a Rule 34 Request for Inspection of Facility and Operations upon Robert Jeffs, then counsel for Defendant Discovery Academy. A true and correct copy of the DLC"s Request for Inspection is attached hereto as Exhibit A. The Rule 34 Request designates that an expert chosen by the DLC, Dr. Matthew Davies, be permitted to interview a selection of students and staff, review certain student and staff records, and inspect physical premises, in order to develop a factual basis for an opinion as to whether Discovery Academy serves any student with substantial emotional impairment. Dr. Davies CV is attached to Exhibit A, Rule 34 Request for Inspection.

10. On August 28, 2008 Discovery Academy filed and served a timely objection to the DLC's Request for Inspection. A true and correct copy of that objection is attached hereto as Exhibit B.

11. On or about Sept. 15, 2008, Robert Jeffs, counsel for Discovery Academy, notified counsel for the DLC that his representation had been terminated, and that Discovery Academy would be represented by Randall K. Spencer, Fillmore & Spencer, 3301 N. University Ave., Provo, Utah 84604.

12. In accordance with FRCP 37 Counsel for the DLC and for Discovery Academy have communicated in good faith with respect resolving the discovery issue presented in this motion without court action but have been unable to resolve the dispute.

ARGUMENT

I. HIPAA DOES NOT APPLY TO INVESTIGATIONS OF ABUSE OR NEGLECT BY STATE DESIGNATED PROTECTION AND ADOVCACY ORGANIZATIONS ACTING UNDER FEDERAL AUTHORITY.

A. HIPPA does not prohibit the disclosure of protected health information to Protection and Advocacy organizations under the "as covered by law" exception.

4

Discovery Academy's objects to the proposed inspection of the school by Dr. Davies on the basis that the examination of any school records will violate the HIPAA Privacy Rule, more formally identified as Standards for Privacy of Individually Identifiable Health Information issued by the U.S. Department of Health to implement the provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). At the outset, it should be noted that this objection, even if well-founded, would not prevent Dr. Davies from inspecting the DA facilities, and from talking with students and staff, activities which are the substantive core of the DLC's request to inspect.

Dr. Davies is a mental health professional qualified under the laws and regulations of Utah. No objection has been raised to his qualifications. It is disingenuous at best for DA to deny the presence at DA of students that trigger the federal obligation to allow investigations by the DLC, while at the same time denying the DLC and the court access to the information needed to prove the truth of that claim.

To the extent that any of the information requested by the DLC is covered by HIPPA, the objection fails for two reasons. First, the Privacy Rule does not apply to the DLC, acting as Utah's designated protection and advocacy organization and part of the national protection and advocacy system. Investigations of abuse and neglect being conducted by protection and advocacy organizations, acting under the authority entrusted to them by the federal enabling statues which created the protection and advocacy system, are not subject to the confidentiality provisions of the HIPAA Privacy rule. According to the Preamble to HIPAA regulations issued by the U.S. Department of Health and Human Services, "covered entities may" disclose medical information under §164.512 (a) of the rule to Protection and Advocacy members without first obtaining an individual's authorization, Federal Register /

5

Vol. 65, No. 250, p. 82594. Copy attached as Exhibit C. Ohio Legal Rights Service v. The

Buckeye Ranch, 365 F. Supp. 2d 877, 889 (S.D. Ohio 2006).

The assertion that HIPAA limited the ability of protection and advocacy to investigate

complaints of abuse and or neglect was put to rest when the Office of Civil Rights (OCR) of

HHS –which is the federal agency charged with enforcing HIPAA – clarified that HIPAA

does not preclude P&A access to records as long as the access requirements of the P&A

statutes are satisfied:

> Question: May a covered entity disclose protected health information
> to a Protection and Advocacy system where the disclosure is required by
> law?

> Answer: Yes. The Privacy Rule permits a covered entity to disclose
> protected health information (PHI) without the authorization of the
> individual to a state-designated Protection and Advocacy (P&A) system to
> the extent that such disclosure is required by law and the disclosure
> complies with the requirements of that law. 45 CFR 164.512(a)....[1]

The "as covered by law " exception to HIPPA compliance in the context of investigations

by protection and advocacy organizations was explicitly adopted in Protection and Advocacy

System , Inc. v. Freudenthal, 412 F. Supp. 2d 1211, (U.S.D.C. Wyoming 2006).(P&A access

permitted to school incident reports with names redacted).

**B. The DLC Rule 34 Request does not require the disclosure of protected health
information because the DLC has indicated that it will keep confidential the
identities of the students whose records are reviewed**

The DLC Rule 34 Request directs that Dr. Davies be allowed to talk to students and staff,

review school and student records, and inspect facilities. Rule 34 Requests, Para. 6, p.3. The

---

1. May a covered entity disclose PHI to a Protection and Advocacy system where the disclosure is required by
law? (FAQ #909, Department of Health and Human Services, last updated 8/08/05)
www.hhs.gov/hipaafaq/permitted/require/909.html.

DLC explicitly stated in its Rule 34 Request that that it would not disclose the identities of students who spoke with Dr. Davies, or the identities of the students referred to in the records he examines, and that any records provided to him be redacted or de-identified. This type of information is not protected health care information within the meaning of HIPPA. 45 C.F.R. §160.103.

Additionally, any records obtained under PAIMI by a protection and advocacy system are subject to the same federal or state confidentiality regulations that are applicable to providers of mental health services. 42 U.S.C. § 10806(a).

Discovery Academy denies that it any time served any student with any type of significant emotional impairment, although its public marketing materials, both currently and in the past, state that DA students have behavioral and emotional problems, and commonly have received diagnoses of ADD, ADHD and learning disabilities. The key question then becomes, does DA in fact serve students who have "significant mental illness or emotional impairment? If students with those conditions can be found at DA, DA must permit the DLC to investigate complaints of abuse and/or neglect at the facility. If student with those conditions are never placed at DA, then the DLC lacks federal authority to investigate the allegations of wrong-doing at the facility.

The only practical way to develop evidence bearing on that question is to have a qualified expert take a hard look at the kinds of students who attend the school.

II.     NO RECOGNIZED PRIVACY INTEREST PREVENTS THE DLC FROM HAVING AN EXPERT WITNESS SPEAK TO STUDENTS AND STAFF, AND REVIEWING STUDENT AND SCHOOL RECORDS, USING A METHOD THAT PROTECTS CONFIDENTIALITY.

Discovery Academy points to Johnson by Johnson v. Thompson, 971 F. 2d 1487 (10th Cir. Okla. 1992) to support its argument that the general privacy rights of the families with students enrolled at the school prevents the disclosure of the names of the students and their families.

Here the DLC does not seek the disclosure of the names of the students attending DA, or the names of their parents, and for that reason, the decision in *Johnson* has no bearing on the issue before this court.

In *Johnson* the medical defendants refused to disclose the names of infants who had been part of a study designed to determine the efficacy of various treatments for infants born with spina bifida. The plaintiffs, the families of certain infants who had been part of that study, wanted to contact the families of other students in order to determine if those families had received different treatment. The refusal to disclose this information was upheld by the appellate court.

In this action, the DLC does not seek a disclosure of the identity of Discovery Academy students. As stated in its Rule 34 Request, the DLC has promised that that the identities of the student will be kept confidential, and that any records supplied by Discovery Academy to Dr. Davies be redacted or de-identified.

Equally to the point, the purpose of Dr. Davies' interviews will be to find out what types of emotional impairments (if any) are present in members of the student body, rather than "what happened" to any student during his or her enrollment. Dr. Davies inquiry will focus on the following subjects; (1) what kind of diagnoses students had received before enrollment; (2) whether students were they taking prescribed medications before they came to Discovery Academy; (3) whether students receive medication for emotional conditions while attending Discovery Academy? Dr. Davies will be reviewing student medical records

8

for the same type of information. At trial, Dr. Davies will be able to present the conclusions from his research regarding the emotional status of Discovery Academy students without disclosing the identity of the students he may have spoken to, or whose records he reviewed.

Of course, Discovery Academy enjoys unrestricted access to the same students and same records that the DLC seeks to access. Nothing prevents Discovery Academy from retaining an expert to conduct a review similar to that being done by Dr. Davies.

With respect to Discovery Academy's suggestion that the students of the school be deposed, if school administrators believe that the only way to find out if any of its students have emotional impairments is to take their depositions, nothing prevents them from doing so. Certainly the Rule 34 Inspection proposed by the DLC will be less costly and less intrusive than student depositions.

III. THE SCOPE OF DISCOVERY PERMITTED UNDER RULE 34 ENCOMPASSES ANY "OPERATION" BEING CONDUCTED ON DESINATED LAND. IN THE CASE OF A SCHOOL, THE INSPECTION OF AN OPERATION INCLUDES INTERVIEWING STUDENTS, STAFF AND SCHOOL RECORDS.

Discovery Academy's final objection to the Rule 34 Inspection sought by the DLC is that that the scope of discovery permitted under Rule 34 does not permit neither the interview of students and staff, or the review of student and school records. Rule 34 states in relevant part:

**Rule 34. Producing Documents, Electronically Stored Information, and Tangible Things, or Entering onto Land, for Inspection and Other Purposes**

(a) In General.
A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative **to inspect, copy, test, or sample** the following items in the responding party's possession, custody, or control:

(A) **any designated documents or electronically stored information** — including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations — stored in any medium from which

information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) **to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or** _any designated object or operation on it._ (emphasis added)

In this case, the DLC seeks an inspection of the operation of a school, for the specific purpose of discovering evidence directly relevant to proving whether the school (here Discovery Academy) serves any student with a significant emotional impairment. If the issue was whether Discovery Academy served any student who was not Caucasian, the DLC would certainly be entitled to look at the students for the purpose of determining if any non-Caucasian was present.

In this case, the disputed fact issue is whether any Discovery Academy student has a significant emotional impairment. While a simple visual inspection cannot provide the answer to that question, it cannot be reasonably disputed that the students and staff, by answering the types of questions outlined above, can provide information that will help answer that question.

The position taken by Discovery Academy, which Rule 34 inspection does not permit the interview of its students or staff, is incorrect. In fact, this case demonstrates why broad access is necessary to accomplish the goals that Rule 34 serves.

Discovery Academy asserts that the DLC has no authority to investigate complaint of abuse or neglect at the school because it does not serve any student with a significant emotional impairment. The only way to test that claim is to have a mental health professional conduct a review designed to identify what types of students attend the Academy. However, Discovery Academy refuses to permit any such review because it claims that no children with emotional impairments are enrolled. A better example of a circular argument would be hard to find.

10

It has long been recognized that Rule 34 allows for the broadest possible scope of discovery.

> Rule 34, like the rules on interrogatories and requests for admissions, is limited to parties to an action. Save for that limitation it is as broad in scope as any of the discovery devices and is in all respects an essential part of a liberal and integrated scheme for the full disclosure of relevant information between the parties that will facilitate the prompt and just disposition of their litigation. **The rule authorizes the broadest sweep of access, inspection, examination, testing, copying, and photographing of documents or objects in the possession or control of another party.** (citations omitted) (emphasis added)

Wright & Miller, Federal Practice and Procedure, §2206 (2008)

## CONCLUSION

The Disability Law Center respectfully requests that the Court issue an order compelling the Defendant to comply with the Rule 34 Request for Inspection of Facility and Operations referred to herein.

Respectfully submitted this ___ day of ~~November~~ Dec., 2008

DISABILTY LAW CENTER

Raymond Scott Berry
Attorney for The Disability Law Center

# EXHIBIT A

RAYMOND S. BERRY [0311]
ROBERT B. DENTON [0872]
DISABLITY LAW CENTER
205 North 400 West 1st Floor
Salt Lake City, Utah 84103
Telephone: (801)363-1347
Fax: (801)363-1437

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER<br><br>    Plaintiff,<br><br>v.<br><br>DISCOVERY ACADEMY, BRENT HALL, Executive Director of Discovery Academy, BRENT HALL, dba Discovery Academy, and IVY ACADEMY, INC., dba Discovery Academy.<br><br>    Defendants. | **RULE 34 REQUEST FOR INSPECTION OF FACILITY AND OPERATIONS**<br><br>Case No. 2:07-cv-511<br><br>District Judge Dee Benson |

Plaintiff Disability Law Center pursuant to FRCP 34 requests that Defendant Discovery Academy allow an inspection of its facility and operations by Plaintiff's Expert. As used herein, "written materials, documents, and or records" includes electronically stored versions. The purpose of the inspection is allow Dr. Davies access to factual materials relevant to the development of an expert opinion as to whether DA is a facility that from time to time provides residential opportunities to minors who meet the following statutory definition.

42 U.S.C.A. § 10802

..........

1

**(4)** The term "individual with mental illness" means, except as provided in section 10804(d) of this title, an individual—

**(A)** who has a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the State;

## Description of Inspection

1. The inspection will be conducted by Dr. Matthew V. Davies, Ph.D. Dr. Davies is a Utah licensed mental health professional specializing in child psychology. Dr. Davies current Curriculum Vitae is attached.

2. The inspection will take place at Discovery Academy in Provo, Utah on August 28th and 29th, 2008, beginning at 10:00 a.m., and continue until deemed completed by Dr. Davies, or at a mutually agreeable time convenient for Dr. Davies and the parties.

3. Physical Plant; During the course of the inspection Dr. Davies will be allowed to visit and inspect all the buildings used in connection with the Discovery Academy operation in Provo, Utah, including all rooms located in those buildings, specifically including all rooms used for any type or category of student isolation or intensive supervision. Dr. Davies will be allowed to photograph rooms and buildings which in his view are relevant to the development of his professional opinion.

4. Student Interviews; Dr. Davies will be allowed to select a sample of Discovery Academy students to interview. The interviews of the selected students will be conducted in

private, to minimize the possibility of student concern for retaliation. These interviews may be recorded. The identities of the students interviewed will be kept confidential by Dr. Davies.

5. Staff Interviews; Dr. Davies will be allowed to select a reasonable sample of Discovery Academy administrative and operational staff, including contract staff, to interview. The interviews of those selected will be conducted in private. These interviews may be recorded.

6. Student Records; Dr. Davies will be allowed to review and inspect a selection of the following written materials relating to DA applicants and current students chosen at his discretion. Dr. Davies will not disclose the identity of the students or applicants to whom these records relate. Dr. Davies will be entitled to receive copies of records which he selects as relevant to his opinion, in which the names of the students have been redacted. Dr. Davies may share these redacted records with counsel for the DLC, who shall also keep confidential the identities of the applicants or students referenced in the materials.

   a. Assessment tools and admission criteria including a list of students who have been accepted for treatment as well as applicants who have been assessed and not been admitted.

   b. Admission / Application documentation; (demographic, financial, insurance information, etc.)

   c. Admission summaries.

   d. Medical history and physical examination records.

3

e. Initial assessment (i.e. a summary of presenting complaints, family history, behavioral history, etc.)

f. Psychological evaluation.

g. Initial treatment plan including progress criteria.

h. Ongoing treatment reviews.

i. Daily progress notes

j. Individual, family and group therapy progress notes.

k. ☐Discharge/follow-up plan.

l. Discharge summary.

m. ☐Billing information.


7. Manuals; Dr. Davies will be allowed to review all policy, procedure and program manuals used by the Discovery Academy and to receive copies of those portions of those manuals which he deems relevant to the development of his professional opinion. To the extent any such manuals are deemed proprietary information by Discovery Academy, Dr. Davies and DLC agree not to provide copies of to third parties not involved in this litigation.


8. Medication Management; Dr. Davies will be entitled to review all records relating to medication management and administration at the Discovery Academy, including medication purchase records, and medication administration logs, and to receive copies of the portions of these records which deems relevant to the development of his

professional opinion, with the names of identified students redacted. Dr. Davies may

share copies of the redacted documents he selects with the Plaintiff.

Dated this ___ of July, 2008

DISABILITY LAW CENTER

Raymond Scott Berry
Attorney for Disability Law Center

# EXHIBIT B

ROBERT L. JEFFS, #4349
JEFFS & JEFFS, P.C.
90 North 100 East
P.O. Box 888
Provo, Utah 84603
Telephone: (801) 373-8848
Facsimile: (801) 373-8878
Attorneys for Defendants
     *Brent Hall, individually, and as Executive Director of Discovery Academy*
     *and Ivy Academy, Inc. dba Discovery Academy*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER,<br><br>    Plaintiff,<br><br>    vs.<br><br>DISCOVERY ACADEMY, BRENT HALL,<br>Executive Director of Discovery Academy,<br>BRENT HALL, dba Discovery Academy,<br>and IVY ACADEMY, INC., dba Discovery<br>Academy,<br><br>    Defendants. | **DEFENDANTS' OBJECTIONS TO<br>PLAINTIFF'S RULE 34 REQUEST FOR<br>INSPECTION OF FACILITY AND<br>OPERATIONS**<br><br><br>Civil No. 2:07-cv-511<br>District Judge Dee Benson |

**I.**    **Defendants Object to any and all Student Interviews, Staff Interviews, Student Records and Medication Management.**

Under Rule 34, a party may request another party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . designated documents or electronically stored information . . . or any designated tangible things" that are in the

"responding party's possession, custody, or control." FRCP 34(a)(1). Furthermore, a party may request another party "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." FRCP 34(a)(2). Rule 34 is limited to discovery requests that comply with Rule 26(b) of the Federal Rules of Civil Procedure. Specifically, Rule 26(b) only allows parties to "obtain discovery regarding any nonprivileged matter that is relevant." Moreover, Courts deny discovery requests when the privacy interests involved outweigh the need for the information. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992). Plaintiffs request should be denied because the student records and medication management are protected documents under HIPAA and the interviews are more invasive of students' and staff's privacy interest then the Plaintiff's need for the information.

II.    **Plaintiff's Request for Student Records and Medication Management Should be Denied Because the Records are Protected By HIPAA.**

Plaintiff requests to view student records and medication management including, among other things, medical histories; physical examination records; psychological evaluations; individual, family and group therapy progress notes; and billing information. These records represent protected heath information covered by Health Insurance Portability and Accountability Act (HIPAA). (See HIPAA §164.501). HIPAA has specific requirements for requesting protected health information. (See HIPAA §164.512(e)). Plaintiff's request does not comply with these requirements. Because the student records and medication management are protected by HIPAA and plaintiff has not complied with HIPAA requirements, Plaintiff's request should be denied.

2

**III.    Plaintiff's Request for Student And Staff Interviews Should be Denied Because it Impinges on The Privacy Interests of Non-Parties.**

Courts will deny a discovery request where the privacy interest being invaded outweighs the requesting parties need for information. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992), Furthermore, Rule 34 permits discovery requests to be served by "a party...on any other party." In the current matter, the Plaintiff seeks to "select a sample of Discovery Academy students to interview." (See Rule 34 Request for Inspection of Facility and Operations). Plaintiff, also, wants to "select a reasonable sample of Discovery Academy administrative and operational staff, including contract staff, to interview." (See Rule 34 Request for Inspection of Facility and Operations). The purpose cited by Plaintiff is to "allow Dr. Davies access to factual materials relevant to the development of an expert opinion as to whether DA is a facility that from time to time provides residential opportunities to minors. (See Rule 34 Request for Inspection of Facility and Operations.) This request is invasive of the privacy interests of the students and staff and will disrupt school activities. More importantly, the request seeks private, unrecorded interviews of minor students and employees of Defendant. Those "interviews," if conducted, should be by deposition so that the parties may have their own counsel present if they desire and a record of the information is preserved.

3

**IV.    Plaintiff's Request be Denied Because the Language of Rule 34 does not Encompass Student and Staff Interviews.**

Rule 34 permits a party to request from another party to inspect "documents or...tangible things" in the other party's "possession, custody, or control." Rule 34 also permits the requesting party to enter the other party's property to inspect "the *property* or designated *object* or *operation* on it." (Emphasis added). Furthermore, rule 34 uses the terms "inspect, measure, survey, photograph, test, or sample" which modify the terms "property...object or operation." FRCP 34(a)(2). These terms relate to the ability to physically inspect the property or its objects and operations. Interviews are not documents or tangible things and the students and staff are not the Defendants property nor are they objects or operations on the property. Therefore, rule 34 does not extended to interviews of students or staff. The rules provide a mechanism for conducting "interviews," namely, by deposition. A party does not have the right to compel a private interview of third parties.

WHEREFORE, Plaintiff's Request for Inspection should be denied.

DATED and SIGNED this 27th day of August, 2008.

_____/s/_____
Robert L. Jeffs

4

CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August 2008, the foregoing Defendants' Objection

to Plaintiff's Rule Request for Inspection of Facility and Operations was filed through the

Court's Electronic Filing System, through which a copy was sent electronically to the following:

> R. Scott Berry
> Disability Law Center
> 205 North 400 West
> Salt Lake City, UT 84103
> sberry@disabilitylawcenter.org

/s/
Susan Parduhn

5

# EXHIBIT C

## U.S. Department of Health & Human Services

# May a covered entity disclose protected health information to a Protection and Advocacy system where the disclosure is required by law?

## Answer:

Yes. The Privacy Rule permits a <u>covered entity</u> to disclose protected health information (PHI) without the authorization of the individual to a state-designated Protection and Advocacy (P&A) system to the extent that such disclosure is required by law and the disclosure complies with the requirements of that law. 45 CFR 164.512(a). The Developmental Disabilities Assistance and Bill of Rights Act (DD Act) provides for each state to designate a public or private entity as the Protection and Advocacy system to protect and advocate for the rights of individuals with developmental disabilities, including investigating incidents of abuse or neglect. The P&A designated pursuant to the DD Act is also the Protection and Advocacy system for purposes of the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act) and is empowered to protect and advocate for the rights of individuals with mental illness. These statutes and their implementing regulations require that access to records be provided to P&As under certain circumstances. See the DD Act at 42 USCA 15043(a)(2)(I) and (J) and the PAIMI Act at 42 USCA 10805 (a)(4), and their implementing regulations at 45 CFR 1386.22 and 42 CFR 51.41, respectively. Thus, a covered entity may disclose PHI as required by the DD and PAIMI Acts to P&As requesting access to such records in carrying out their protection and advocacy functions under these Acts. Similarly, covered entities may disclose PHI to P&As where another federal, state or other law mandates such disclosures, consistent with the requirements in such law. Where disclosures are required by law, the Privacy Rule's minimum necessary standard does not apply, since the law requiring the disclosure will establish the limits on what should be disclosed. Moreover, with respect to required by law disclosures, a covered entity cannot use the Privacy Rule as a reason not to comply with its other legal obligations.

Section 164.512(a)(2) provides that in making a "required by law" disclosure about adult abuse, neglect or domestic violence (section

164.512(c)), for judicial or administrative proceedings (section 164.512 (e)), or for law enforcement purposes (section 164.512(f)), covered entities must also comply with any additional privacy requirements in these provisions that apply. However, none of the additional procedural protections in sections 164.512(c), (e) and (f) apply to the type of "required by law" disclosures to P&As under the provisions of the DD and PAIMI Acts discussed here.

Date Created: 06/10/2005
Last Updated: 08/08/2005

HHS Home | HHS Frequent Questions Home | Contacting HHS | Accessibility | Freedom of Information Act | Disclaimers | Helping America's Youth

U.S. Department of Health & Human Services · 200 Independence Avenue, S.W. · Washington, D.C. 20201