IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, <br><br> Plaintiff, <br><br> v. <br><br> DISCOVERY ACADEMY, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:07-cv-755 CW <br><br> Judge Clark Waddoups |

## INTRODUCTION

Plaintiff Disability Law Center (the "Center") filed a complaint for injunctive and declaratory relief against the Discovery Academy (the "Academy") and Brent Hall ("Hall"), its executive director, seeking among other relief, full and immediate access to the residents of the Academy and their records to complete an investigation of alleged abuse. The complaint was filed on July 12, 2007. The matter is now before the court on the defendants' motion for summary judgment dismissing the complaint and the plaintiff's motion to compel compliance with a request under *Federal Rule of Civil Procedure* 34 for an inspection of the facility and operations. The Academy raises both constitutional and statutory challenges to the relief being sought. Upon consideration of the facts and the legal arguments presented, the court grants the motion for summary judgment, finding that the issue is moot as to the one resident for whom the assertion of abuse was made and that there is not a reasonable factual basis to support a finding of probable cause by the Center to conduct an investigation of abuse of the remaining existing residents of the Academy. Because of

1

this finding it is unnecessary to reach the constitutional challenges raised by the Academy or the Center's motion to compel compliance.[1]

## FACTUAL BACKGROUND

The Center is a non-profit corporation organized under the laws of the State of Utah as a Protection and Advocacy System to protect the legal and civil rights of Utah citizens who have disabilities pursuant to the *Protection and Advocacy for Individuals with Mental Illness Act* ("PAIMI"), 42 U.S.C. § 10801 *et seq.*[2] The Center is charged by statute to investigate incidents of abuse and neglect of persons with mental illness. The Academy is a clinical and therapeutic boarding school located in Utah County. Hall is the executive director of the Academy.

The Center's request for an investigation arose from an allegation in June 2005 that B.B., a resident of the Academy, had been "manually restrained for four hours and was bruised from it."[3] The Academy granted the request and B.B. was interviewed. In the interview, B.B. reported that he had been restrained but never for more than 15 minutes, although he had been restrained repeatedly over a four hour period.[4] Following the interview, on or about June 17, 2005, B.B's parents removed

---

[1] Under well established principles, the court should only address constitutional challenges to a statute when necessary to resolve the issues raised by the complaint. *See, e.g.*, *United States v. Cusumano*, 83 F.3d 1247 (10th Cir. 1996).

[2] In its complaint, the Center alleges that the action is also brought under the *Protection and Advocacy for Individual Rights Act*, ("PAIR"), 29 U.S.C. § 794e, *and* the *Developmental Disabilities Assistance and Bill of Rights Act* ("DD"), 42. U.S.C. § 15041, *et seq.*, but in its briefing, the Center relies solely on the authority vested in it by PAIMI.

[3] Complaint, ¶ 18 (Docket No. 2).

[4] *Id.* ¶ 21.

him from the Academy.[5] The Center nevertheless continued to request additional information and interviews from the Academy's staff. The Center acknowledges that it received records relating to B.B., but continues to seek records of other residents of the Academy.[6]

The staff of the Center continued to have meetings with members of the Academy staff and to request additional information. Several months later, in November 2005, the Center requested general monitoring of the Academy. In early March 2006, the Center again requested general monitoring and interviews with two specific residents. A few days later, the Center retracted the request for interviews because it had failed to notify the parents or guardians of the residents. Over the next several months, however, the Center continued to request information, records and interviews.

The Academy contends that it has been fully cooperative with the Center, but eventually responded that it would provide no more information to the Center. The Center complains that the Academy engages in a practice that hampers and directly conflicts with "the Congressionally-mandated functions and duties of the [Center]."[7] The Center seeks an order enjoining the Defendants from denying full and immediate access for monitoring and "directing defendants to immediately provide [the Center] with full, immediate, and effective access to the residents of the Discovery Academy for the purpose of its investigations of [the Academy's] restraint, seclusion and intrusive intervention practices, as well as necessary guardian contact information for the [Center] during its

---

[5] Affidavit of Brent Hall, ¶ 11 (Dec. 16, 2008) (Docket No 22, Attachment 1).

[6] Complaint, ¶¶ 32–34, 37 (Docket No. 2).

[7] *Id.* ¶ 55.

investigation, as well as guardian contact information for J.B., P.A., A.B."[8]

The Center acknowledges in its opposition that B.B. is no longer at the Academy and makes no argument that it has further reason to investigate whether B.B. may have been subject to abuse. The Center argues, however, that "the matter is not about one student, but rather the [Center's] attempt to investigate a credible allegation that students at [the Academy] were subject to improper restraint and seclusion as a matter of course."[9] In making this argument, the Center concedes that the student body of the Academy "may well have turned over entirely since 2005."[10] It suggests that the court should not allow a "complaint of general operational misconduct [to go] uninvestigated" without explanation and that "it may well be that the same operational violations then are continuing today."[11] The Center does not provide supporting evidence that it has received complaints about other individual students at the Academy. It also does not provide a factual basis to support that it has probable cause to believe any other specific individual at the Academy with mental illness is suffering from neglect or abuse.

## ANALYSIS

**I.     STANDARD FOR SUMMARY JUDGMENT**

"Summary judgment is appropriate if there is no genuine issue of material fact and the

---

[8] Complaint Prayer, ¶ ¶ 3–4.

[9] Plf's Memo. in Opp. to Discovery Academy's Mot. for Summary Judgment, at 13 (Docket No. 44) (hereinafter "Plf's Opp.").

[10] *Id.*

[11] *Id.*

moving party is entitled to judgment as a matter of law."[12] If a movant carries its initial burden of proving it is entitled to judgment as a matter of law, "the nonmovant may not rest solely on his pleadings, but must set out specific facts in support of his claim by reference to affidavits, deposition transcripts, or other exhibits incorporated therein."[13] If the evidence merely contains conclusory allegations, however, such allegations "are insufficient to establish an issue of fact."[14]

## II. SCOPE OF PAIMI

The Center relies upon its authority under the PAIMI to investigate allegations of abuse. The relevant language provides as follows:

> A system established in a State under section 103 [42 U.S.C § 10803] to protect and advocate the rights of individuals with mental illness shall –
> (1) have the authority to–
> (A) investigate incidents of abuse and neglect of individuals with mental illness if the **incidents are reported to the system or if there is probable cause to believe that the incidents occurred**;
> (B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State.[15]

There is no dispute in this case that the Center qualifies as a system established by the State of Utah to act under the authority of the statute to protect individuals with mental illness. The statute

---

[12] *Ellis v. State Farm Fire & Cas. Co.*, 322 Fed. Appx. 594, 596 (10th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); Fed. R. Civ. P. 56(c)).

[13] *Jordan v. Fed. Bureau of Prisons*, No. 03-1104, 2006 U.S. App. LEXIS 32290, at *21–22 (10th Cir. Sept. 18, 2006).

[14] *Barber v. Colorado*, 562 F.3d 1222, 1228 (10th Cir. 2009) (citation omitted).

[15] 42 U.S.C. § 10805(a)(1)(A)–(B) (2006) (emphasis added).

provides authority to investigate only in two circumstances: when incidents are reported to the Center or if there is probable cause to believe such an incident has occurred. The Academy acknowledges that the requirements of the statute had been met for an investigation of the allegations made about B.B. The Academy cooperated with the Center, provided access to records, and allowed an interview of both B.B. and staff members. The investigation, however, became moot once B.B.'s parents removed him from the Academy. Even then, the Academy allowed the Center to continue and complete its investigation about the treatment of B.B . The Academy's willingness to allow the Center to investigate the allegations made about the treatment of B.B. and his removal from the Academy moot any claimed need for relief arising from those allegations.[16]

The Center accepts that the relief it seeks is moot as it relates to B.B., but argues that those allegations gave it probable cause to investigate whether other incidents of abuse may be occurring at the Academy, including "general operational misconduct." The statute, however, grants authority to investigate incidents of abuse of "individuals," not general operations. Indeed, the particular language that authorizes access to records is couched specifically in terms of records of "individuals." Section 10805(a)(4)(B), which appears to be the section upon which the Center relies, provides that the Protection and Advocacy System shall

> (4) . . . have access to all records of –
> . . . .
> (B) any **individual** (including an individual who has died or whose whereabouts are unknown) –
> (i) who by reason of the mental or physical condition of **such individual** is unable to authorize the system to have access;
> (ii) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

---

[16] *See, e.g.*, *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005); *Iowa Prot. & Advocacy Servs. v. Tanager, Inc.*, 427 F.3d 541 (8th Cir. 2005).

> (iii) with **respect to whom a complaint has been received** by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that **such individual** has been subject to abuse or neglect. . . .[17]

The focus of the statutory protection is upon the protection of individuals for whom there is either a complaint or a finding of probable cause to believe "such individual" has been subjected to abuse. Nothing in the statute suggests a general investigative power absent reference to an identified individual. The limitations in the statute and the regulations implementing it are necessary to avoid warrantless searches that are otherwise prohibited by the Fourth Amendment. To avoid constitutional infirmity, the act must be carefully crafted to address the specific concerns raised by Congress and must avoid granting "almost unbridled discretion" to the agency charged with carrying out the congressional mandate.[18] To meet this requirement, the act must provide "certainty and regularity in its application" that "provides a constitutionally adequate substitute for a warrant."[19] The PAIMI meets these requirements by imposing a requirement for either a complaint or a finding of probable cause as to a specific individual. By regulation, probable cause is defined as follows:

> Probable cause means reasonable grounds for belief that an **individual with mental illness** has been, or may be at significant risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.[20]

---

[17] 42 U.S.C. § 10805(a)(4)(B) (emphasis added).

[18] *Donovan v. Dewey*, 452 U.S. 594, 601 (1981).

[19] *Id.* at 603.

[20] 42 C.F.R. § 51.2 (2009) (emphasis added).

Further enforcing the requirements of the statute itself, the regulation requires that the probable cause finding be supported by facts pointing to the abuse of a specific individual. Under PAIMI, the Center becomes the advocate for that individual. The act does not vest the Center with authority to conduct broad based investigations of "general operational misconduct." This conclusion must be reached particularly in a case, such as this one, where the Center acknowledges that the students who may have been the focus of the original concern may no longer be residents of the Academy.

The conclusion that the PAIMI does not authorize general investigative searches is consistent with the analysis in *Ohio Legal Rights Service v. Buckeye Ranch, Inc.*[21] In that case, the plaintiff sought records from a mental health provider for a specific child who had been the subject of a complaint that she had suffered injury from the use of seclusion and restraint techniques.[22] The court concluded that there was a factual basis to support a finding of probable cause that the child had suffered an incident of abuse and allowed access to her records.[23] The plaintiff in that case sought further access to all seclusion and restraint logs, arguing that it had probable cause to believe one or more children had been abused or neglected.[24] As in this case, the plaintiff made no attempt to match the request with the specific requirements of subsection (B) of § 10805(a)(4).[25] The court found that the plaintiff wanted to develop a seclusion and restraint baseline and that it had no evidence that at the time it made the request, it had probable cause to believe abuse or neglect had occurred at the

---

[21] 365 F. Supp. 2d 877 (S.D. Ohio 2005).

[22] *Id.* at 879.

[23] *Id.* at 886–87.

[24] *Id.* at 887.

[25] *Id.*

defendant's facility.[26] Such a purpose did not meet the requirements of PAIMI and the court denied access to the requested information.

Similar to the plaintiff in *Buckeye Ranch,* the Center has failed to come forward with evidence to support a finding of probable cause or complaint of any incident of abuse for any individual other than B.B. As support for its argument that there is probable cause, the Center relies solely on the affidavit of its managing attorney that he approved the investigation after the Center

> received a credible complaint of abuse and neglect at Discovery Academy. In the process of investigating the individual complaint, [the Center] staff learned of additional credible allegations of abuse and neglect in the manner Discovery Academy general [sic] applied restraint and seclusion procedures on its students.[27]

The managing attorney fails to provide any factual support for what the allegations were, who made the allegations, what the substance of the complaint was or the name of the supposed victims of the abuse. Further, the Center failed to provide evidence that it in fact made a finding that there was probable cause to believe incidents of abuse or neglect were occurring, that it communicated to the Academy any factual basis for such a finding, or indeed, that it made such a finding at all. At oral argument, counsel for the Center was unable to provide any additional factual support for the assertion.[28]

---

[26] *Id.*

[27] Affidavit of Kerry Chlarson, ¶ 14 (Apr. 6, 2009) (Docket No.45).

[28] Counsel for the Center also argued at oral argument that the Center was not required to produce factual support for its determination that there was probable cause until the trial on the merits of its right to an injunction. Counsel fails to understand that when a party moves for summary judgment on the basis that the factual evidence is insufficient to support the cause of action, the opposing party must come forward with evidence of facts sufficient to submit the issue to the trier of fact. A conclusory assertion by the party opposing the motion is not sufficient to meet the opposing party's burden to produce the evidence. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317,

The Center argues that it is not required to provide any factual support for its finding of probable cause and that it is the sole arbiter of whether probable cause exists. The Center asserts that once it makes a judgment that probable cause exists, the Academy has no recourse but to allow it to conduct an investigation. In this case, the Center seeks essentially unlimited access to the Academy students for interviews by the Center's delegated expert. Further, the Center argues that the Academy is required to produce all records requested and names and contact information for the parents or guardians of its students. As support, the Center apparently relies upon a statement from *Arizona Center For Disability Law v. Allen*,[29] and cases citing it, although no authority is cited in the Center's memoranda to the court. The case is distinguishable and not persuasive as applied to the facts of this case. In that case, the Arizona Center made a determination that probable cause existed based upon its review of mortality reports indicating that neglect or abuse had occurred in 19 deaths. The provider eventually produced the records for sixteen of the deaths, but refused to produce the records for the remaining deaths because it disagreed that probable cause existed in those three cases. When the Arizona Center sued, the defendant moved for summary judgment, "arguing that they are permitted to 'second-guess' plaintiff's determination of probable cause and withhold information when they determine no probable cause exists."[30] It is important to note that the Arizona Center provided to the defendant a factual basis for its determination. The defendants disagreed that the facts were sufficient. In response to that assertion, the court wrote,

---

322–23 (1986); *Ford v. West*, 222 F.3d 767, 777 (10th 2000).

[29] 197 F.R.D. 689 (D. Ariz. 2000).

[30] *Id.* at 691.

> defendants are not the final arbiter of whether probable cause exists, and defendants may not deny plaintiff's request for access to records on the basis that defendants disagree with the plaintiff's probable cause determination.[31]

By comparison, in this case the Center has failed to come forward with any facts to support its determination that there was probable cause. It simply makes that assertion and argues that the Academy has no recourse to prevent what may be an unwarranted investigation. This is not a case where the Center has come forward with factual support for a probable cause finding and the defendant is arguing that the facts are insufficient. This is not a case in which the defendant is asserting that it is the final arbiter of whether there is probable cause. Rather, in this case the defendant is asserting that the court is the arbiter of whether the Center has a factual basis for its unsupported assertion that probable cause exists.

To accept the Center's argument would require the court to interpret the law as allowing an advocacy center to determine, without any checks or balances of its demand, when it may conduct what is effectively a search and seizure of the defendants' records and information. To find that the PAIMI would authorize such unlimited discretion in the Center would raise the constitutional concerns addressed in *Donovan*. In that case the Court upheld the constitutionality of warrantless regulatory searches, in part, because the act at issue did not allow forcible entries and the subject of the search had recourse to the federal district court should the requested search exceed constitutional limits.[32]

The extent of the possible abuse that the Center's interpretation would allow is evident in this

---

[31] *Id.* at 693.

[32] *Donovan*, 452 U.S. at 604–05.

case. The Center demands that the Academy produce any of the students it requests for interviews. The interviews are to be unlimited. Only the Center's representative would be present. There would be no protections to guard against leading questions or intimidation. The interviewer would have almost unlimited access to records and to the Academy's staff, also without opportunity by the Academy for follow up questions or further clarification. Apparently, the Center would then have its staff and hired experts prepare a report that would become the basis for the Center to take legal action. The Academy would have no opportunity to cross examine, correct, or otherwise provide clarification that would allow a full understanding of the circumstances. The Center would be able to subject the Academy to searches without the constraints imposed by the PAIMI or even any evidence that there was a factual basis for its finding of probable cause.[33] Indeed, the Center's attempt to expand the scope of the investigation to general operational misconduct without identifying the individuals about whom it is concerned or even a factual basis to believe incidents of abuse and neglect are occurring exceeds the carefully crafted limitations imposed in the PAIMI and thus exceeds the authority granted to the Center by the statute. For these reasons, summary judgment dismissing the Complaint with prejudice, based on allegations made in 2005 about B.B., which are now almost five years ago, must be granted. Should the Center have a factual basis to support a finding that probable cause exists to believe incidents of abuse and neglect of specific individuals at the Academy are now occurring and that those individuals fall within the authority of the PAIMI, the statute would allow it to investigate those allegations by complying with the

---

[33] The court need not reach the issue of whether a challenge to the adequacy of evidence to support a finding of probable cause may survive summary judgment where there is a disagreement between the subject of the search and the system requesting the search. In this case, the Center offered no evidence to support its asserted finding. As noted above, such a conclusory assertion is not sufficient to create an issue of fact for trial and the court is required to disregard it.

requirements of the PAIMI and the regulations implementing it.

Because the Complaint must be dismissed for the failure of the Center to meet the requirements of the PAIMI, the court does not reach the issue of whether the request for an inspection under Rule 34 of the Federal Rules of Civil Procedure exceeds the scope of permissible discovery or whether such a request can be used to obtain through discovery the ultimate relief being sought by the Complaint. All other pending motions are denied and the Complaint is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the court GRANTS the defendants' Motion for Summary Judgment[34] and dismisses the Complaint with prejudice. The court DENIES AS MOOT the plaintiff's Motion to Compel[35] and all other motions that are pending in this case.[36]

DATED this 5th day of January, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[34] Docket No. 35.

[35] Docket No. 17.

[36] Docket Nos. 46, 52, and 56.